IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO


Civil Action No.

ESTATE OF LORETTA BARELA,
MARIE CRUZ,
EDDIE ROSA,
RAY ROSA,
CLEOTILDE ROLL, as parent and next friend of JAZMIN TRUJILLO,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER,
Denver Police Dispatcher TSH, individually,
Denver Police Dispatcher BAR, individually,
Denver Police Dispatcher TDP, individually,
Denver Police Dispatcher SMC, individually,
Denver Police Officer Radio Identifier 432A, individually,
Denver Police Officer Radio Identifier 435A, individually, and
Christoper Perea,

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiffs, by and through their attorneys, David M. Roth, of The Murphy Law Firm, LLC, and Complains against the above named Defendants as follows:

### I. INTRODUCTION

1. This case presents a state-created-danger fact pattern, and seeks redress for the conscience shocking preventable death of Loretta Barela.

2. Loretta Barela was beaten and strangled to death by her husband Christopher Perea in the

early morning hours of November 18, 2012.

3.   The attack occurred in and around their home located at 1535 South Carlan Court.

4.   During the violent attack, Ms. Barela was able to flee her home, wearing nothing but a pair of blue jeans, to contact her neighbor across the street.

5.   Shortly before 2:00 AM, Rita Espinoza awoke to Ms. Barela banging on her front door and pleading for help.

6.   Upon witnessing Ms. Barela topless at her door, Ms. Espinoza retreated into her house to obtain a shirt for Ms. Barela and call the police.

7.   When Ms. Espinoza returned to the front door, she saw Mr. Perea dragging Ms. Barela by her hair across the neighbor's front lawn, across the street, and into Mr. Perea's and Ms. Barela's home.

8.   Ms. Espinoza contacted 911 and stated:

> …My neighbor came and was pounding on my door and she had pants on and no shirt on.  Her boyfriend came out and was pulling her across the street.  He locked the door and hitting her.  And she's a very small woman and he's a pretty big man.

9.   911 told Ms. Espinoza that they would "get the officers to go over there."

10.   Ms. Espinoza continued to observe the home for 45 minutes, but police officers did not arrive during that time, which prompted her to call 911 a second time.

11.   During the second phone call, the dispatcher stated:

> Alright.  Yeah, no.  We haven't forgotten about you.  We've just been extremely busy tonight…We do have a call for officers to head out and check on them – or check her I should say.

12.   According to the dispatch logs: Ms. Espinoza's first phone call was made at approximately 1:56 AM; her second phone call was made at approximately 2:45 AM; Police were not dispatched to the scene until approximately 3:03 AM.

13.   Police arrived at the scene at approximately 3:07 AM.  Once at the scene, the police officers knocked on the door.  When there was no response, the police officers walked around the home, but did not make contact with anyone.  The police officers left the

scene at approximately 3:25 AM.   The police officers conducted no additional investigation.

14. Mr. Perea called 911 at approximately 8:15 AM and notified them that Ms. Barela was dead.

15. Mr. Perea was convicted of First Degree murder, First Degree Felony Murder, and Second Degree Kidnapping for his part is Ms. Barela's death and received multiple life sentences for his conduct.

## II. JURISDICTION, VENUE, and NOTICE

16. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.   The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

17. This case is instituted in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

18. Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

19. Timely Notice of Claims under the Colorado Governmental Immunity Act was given by all Plaintiffs to redress the willful and wanton conduct alleged in this lawsuit, which also violates state law.

## III. PARTIES

20. Plaintiff Estate of Loretta Barela is asserting the rights of the decedent, Loretta Barela, a former permanent resident of the United States, who died in Denver, Colorado on November 18, 2012.  Marie Cruz, the daughter of Loretta Barela, is the personal representative of the Estate of Loretta Barela that was opened in the City and County of Denver.

21. At all times relevant hereto, Plaintiff Marie Cruz, daughter of Loretta Barela, was a resident of the State of Colorado and a citizen of the United States of America.

22. At all times relevant hereto, Plaintiff Eddie Rosa, son of Loretta Barela, was a resident of the State of Colorado and a citizen of the United States of America.

23. At all times relevant hereto, Plaintiff Ray Rosa, son of Loretta Barela, was a resident of the State of Colorado and a citizen of the United States of America.

24. At all times relevant hereto, Plaintiff Cleotilde Marie Roll, as parent and next friend of Jazmin Trujillo, minor daughter of Loretta Barela, was a resident of the State of Colorado and a citizen of the United States of America. Ms. Roll is Jazmin Trujillo's adoptive mother.

25. At all times relevant hereto, Denver Police Dispatcher TSH, whose full name is unknown but whom is identified as such in the 911 comments and activity log, was acting under color of state law in his capacity as an Emergency Communications Operator and/or Police Dispatcher employed by the Defendant City and County of Denver and/or of the Denver Police Department. Defendant dispatcher is sued individually under federal and state law and was a moving force in the complained of constitutional and statutory violations and resulting injuries. Based upon information and belief, Defendant Denver Police Dispatcher TSH is a citizen of the United States and a resident of the State of Colorado.

26. At all times relevant hereto, Denver Police Dispatcher BAR, whose full name is unknown but whom is identified as such in the 911 comments and activity log, was acting under color of state law in his capacity as an Emergency Communications Operator and/or Police Dispatcher employed by the Defendant City and County of Denver and/or of the Denver Police Department. Defendant dispatcher is sued individually under federal and state law and was a moving force in the complained of constitutional and statutory violations and resulting injuries. Based upon information and belief, Defendant Denver Police Dispatcher BAR is a citizen of the United States and a resident of the State of Colorado.

27. At all times relevant hereto, Denver Police Dispatcher TDP, whose full name is unknown but whom is identified as such in the 911 comments and activity log, was acting under color of state law in his capacity as an Emergency Communications Operator and/or Police Dispatcher employed by the Defendant City and County of Denver and/or of the Denver Police Department. Defendant dispatcher is sued individually under federal and state law and was a moving force in the complained of constitutional and statutory violations and resulting injuries. Based upon information and belief, Defendant Denver Police Dispatcher TDP is a citizen of the United States and a resident of the State of Colorado.

28. At all times relevant hereto, Denver Police Dispatcher SMC, whose full name is unknown but whom is identified as such in the 911 comments and activity log, was acting under color of state law in his capacity as an Emergency Communications Operator

and/or Police Dispatcher employed by the Defendant City and County of Denver and/or of the Denver Police Department.  Defendant dispatcher is sued individually under federal and state law and was a moving force in the complained of constitutional and statutory violations and resulting injuries.  Based upon information and belief, Defendant Denver Police Dispatcher SMC is a citizen of the United States and a resident of the State of Colorado.

29. At all times relevant hereto, Denver Police Officer Radio Identifier 432A, whose full name is unknown but whom is identified as such in the 911 comments and activity log, was acting under color of state law in his capacity as a Denver Police Officer employed by the Defendant City and County of Denver and/or of the Denver Police Department. Defendant Denver Police Officer Radio Identifier 432A is sued individually under federal and state law and was a moving force in the complained of constitutional and statutory violations and resulting injuries.  Based upon information and belief, Defendant Denver Police Officer Radio Identifier 432A is a citizen of the United States and a resident of the State of Colorado.

30. At all times relevant hereto, Denver Police Officer Radio Identifier 435A, whose full name is unknown but whom is identified as such in the 911 comments and activity log, was acting under color of state law in his capacity as a Denver Police Officer employed by the Defendant City and County of Denver and/or of the Denver Police Department. Denver Police Officer Radio Identifier 435A is sued individually under federal and state law and was a moving force in the complained of constitutional and statutory violations and resulting injuries.  Based upon information and belief, Denver Police Officer Radio Identifier 435A is a citizen of the United States and a resident of the State of Colorado.

31. Defendant City and County of Denver is a Colorado municipal corporation and is the legal entity responsible for itself and for its agents and individual employees.  This Defendant, at all times relevant hereto, was also the employer of the individual defendants and is a proper local governmental entity to be sued under 42 U.S.C. § 1983.

32. Defendant City is properly sued directly under 42 U.S.C. § 1983 for its own and its final delegated decision makers' deliberately indifferent training, deliberately indifferent supervision, and deliberately indifferent failure to adopt policies necessary to prevent constitutional violations.

33. Defendant Christopher Perea is a Colorado resident, who is currently in custody of the Colorado Department of Corrections at the Denver County Jail in Denver, Colorado. Defendant Christopher Perea is sued under Colorado state law for wrongful death.

## IV. STATEMENT OF FACTS

34. Plaintiffs incorporate all of the preceding paragraphs as if they were fully set forth verbatim.

35. In the early morning hours of November 18, 2012, Christopher Perea was violently assaulting his wife, Loretta Barela in their home located at 1535 South Carlan Court in Denver, Colorado.

36. At some point during the altercation, Ms. Barela was able to escape from her home and fled across the street to her neighbor's house.

37. Ms. Barela's neighbor, Rita Espinoza, was awakened by Ms. Barela banging on her front door.

38. Ms. Espinoza opened her front door to see Ms. Barela wearing only blue jeans and pleading for help.

39. Ms. Espinoza went to get a shirt for Ms. Barela, but when Ms. Espinoza returned, she observed Christopher Perea dragging Ms. Barela off of the front porch and across the lawn.  Then, Mr. Perea drug Ms. Barela by her hair across the street, back into their home, and shut the front door.

40. Ms. Espinoza then called 911 and she spoke to a Denver 911 operator, identified as Denver Police Dispatcher TSH on the 911 comments and activity log, and she relayed the following:

> …My neighbor came and was pounding on my door and she had pants on and no shirt on.  Her boyfriend came out and was pulling her across the street.  He locked the door and hitting her.  And she's a very small woman and he's a pretty big man.

41. Ms. Espinoza's first call to 911 was received at or about 1:56:57 AM.

42. Ms. Espinoza watched the house across the street that Mr. Perea dragged Ms. Barela into, waiting for the police to arrive.

43. After waiting approximately 50 minutes, Ms. Espinoza called 911 again, because police had not arrived.

44. Ms. Espinoza's second call to 911 was received at or about 2:46:25 AM.

45. During Ms. Espinoza's second call to 911, Denver Police Dispatcher BAR operator conveyed the following:

> Alright.  Yeah, no.  We haven't forgotten about you.  We've just been extremely busy tonight…We do have a call for officers to head out and check on them – or check her I should say.

46. However, in reality, 911 had not dispatched any police officers to the scene by that time.

47. Based on information and belief, and on the 911 comments and activity log, the 911 operators and/or dispatchers mis-categorized and under-prioritized Ms. Barela's emergency situation.

48. Police were not dispatched until approximately 3:03:05 AM, more than one hour after Ms. Espinoza's first call to 911.

49. During the time between Ms. Espinoza's first call to 911 and when police were first dispatched, Denver Police Dispatcher TDP reset the system timer three times and Denver Police Dispatcher SMC reset the system timer once, necessarily delaying the dispatch of police to the scene.

50. Police officers arrived at the scene at approximately 3:07:48 AM, only four minutes after being dispatched.

51. Ms. Espinoza observed the police officers knock on the door, shine lights in the house, and then depart without making contact with anyone in the house or any of the neighbors. Police departed the scene at approximately 3:24:59 AM, ending their investigation.

52. The next phone call received by 911 was from Christopher Perea, at 8:16 AM, stating:

> …me and my wife got into a fight last night and we had went to bed and I think she's dead.  She's all bruised up.  I think I killed her.

53. Ms. Barela was pronounced dead at the scene with an estimated time of death between 4:00 AM and 6:00 AM.  The cause of death was determined to be a combination of blunt force injury and strangulation.  The manner of death was ruled a homicide.

54. Christopher Perea was convicted of first-degree murder and sentenced to four life sentences.

### FACTS CREATING MUNICIPAL ENTITY LIABILITY

55. Defendant City and County of Denver since 2008 has shown a systemic pattern of

inadequate 911 dispatching and police response times.

56. According to a June 2014 Police Response Time Performance Audit, police response times have increase from an average of 11.4 minutes to 14.3 minutes for priority 0-2 calls.

57. Beginning in April 2012 to present there have been three homicides in which deficient dispatchers and dispatch procedures were cited as contributing factors to those homicides. The three victims of those cases were:

    A. Jimma Reat in April 2012;
    B. Loretta Barela, the victim in this case, in November 2012; and
    C. Kristine Kirk, in April 2014.

58. Based on information and belief, according to several newspaper articles, in all three of these cases, the dispatchers were immediately placed on administrative leave, but resigned prior to completion of the disciplinary investigation.

59. Based upon information and belief, and as evidenced by the subsequent dispatch failures in the Ms. Barela and Ms. Kirk murders, Defendant City has failed to train and/or supervise its employees to handle recurring situations that present obvious potential for Constitutional violations.

60. Based on the 911 activity logs, no less than six individuals associated with 911 dispatch operations were involved with the handling of Ms. Barela's emergency, showing a widespread custom or policy of failing to identify and/or prioritize situations involving imminent danger or a life-threatening emergency.

61. Between Ms. Espinoza's first call to 911 and police being dispatched to the scene, Denver Police Dispatcher TDP reset the system clock three times and Denver Police Dispatcher SMC reset the system clock once, showing a custom of deliberate indifference and lack of urgency within the department regarding cases involving imminent danger or a life-threatening emergency.

62. Based on investigative newspaper articles, since 2011, Defendant City's emergency-communications operators and police dispatcher did not meet time standards more than 1,070 times and left callers waiting unnecessarily. This number is based off of a sample size of 5,670 calls that were audited. In nearly 240 of the calls reviewed, police officers never received crucial scene information from the dispatchers or call takers.

## V. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of Due Process Under the Fourteenth Amendment
### (Estate of Loretta Barela Against Defendants Denver Police Dispatcher TSH; Denver Police Dispatcher BAR; Denver Police Dispatcher TDP; Denver Police Dispatcher SMC; Denver Police Officer Radio Identifier 432A; and Denver Police Officer Radio Identifier 435A Only)

63. Plaintiffs incorporate all of the preceding paragraphs as if they were fully set forth verbatim.

64. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

65. All Plaintiffs in this action are citizens of the United States and the individual Defendants to this claim are a "person" for purposes of 42 U.S.C. § 1983.

66. Defendants Denver Police Dispatchers TSH, BAR, TDP, and SMC (collectively "Dispatchers"), at all times relevant hereto, were acting under color of state law in their capacity as an Emergency Communications Operator and/or Denver Police Dispatchers, employed by Defendant City.

67. Defendant Dispatchers had a duty to perform emergency assistance to Ms. Barela, a limited and defined individual victim of domestic abuse, who through her neighbor sought police and emergency medical services, and Defendant Dispatchers complained of acts in breach of that duty were conducted within the scope of their official duties of employment.

68. At the time of the complained of events, Loretta Barela, now proceeding through the Plaintiff Estate of Loretta Barela, as her successor, had a clearly established substantive due process constitutional right under the Fourteenth Amendment to life, liberty, and bodily integrity.

69. Any reasonable Emergency Communication Operator and/or Denver Police Dispatcher knew or should have known of these rights at the time of the complained of conduct, as they were clearly established at that time.

70. Defendant Denver Police Dispatchers TDP and SMC actively took steps to put Loretta Barela at substantial risk of serious, immediate and proximate harm by increasing her vulnerability to such danger for private acts of violence by continually resetting the system timer, ignoring late incident alerts, and failing to dispatch police officers until nearly 66 minutes after the initial 911 call.

71. As a result of the above complained of acts by Defendant Dispatchers including, *inter alia*, classifying Ms. Espinoza's 911 call as a low priority, resetting the system timer four times, and failing to dispatch police officers in a reasonable amount of time, Defendant Dispatchers increased the danger that led to Ms. Barela's tragic death.

72. Defendant Dispatchers were consciously aware of the aggravated nature of the assault taking place when Ms. Espinoza contacted him including that Ms. Barela was topless at 2 AM banging on her neighbor's door for help; that Mr. Perea drug Ms. Barela from the neighbor's home and into their home; that it had been 45 minutes since the initial phone call from Ms. Espinoza; and Denver Police Dispatchers TDP did not dispatch police until almost 20 minutes following the second call.

73. If police officers were dispatched within a reasonable time following Ms. Espinoza's first phone call to 911, as is required for a call involving imminent danger or a life-threatening emergency, Ms. Barela would likely still be alive today.

74. These dangers and risks to Ms. Barela's life and safety were obvious, entirely foreseeable, and actually known to Defendant Dispatchers, who took the affirmative steps of providing inadequate information to other dispatchers and/or police officers, resetting the system timer four time, ignoring the incident late alert four times, and prioritizing Ms. Barela's emergency lower and failing to raise the priority, which drastically increased her vulnerability to the danger.

75. Additionally, when Denver Police Officer Radio Identifier 432A and 435A (collectively "Defendant Officers") arrived on scene, Defendant Officers knocked on the front door, but did not make contact with anyone at the house or with Ms. Espinoza.

76. Defendant Officers failed to investigate and departed the scene within 18 minutes of arrival.

77. Based upon information and belief, Ms. Barela's time of death, and readily available domestic violence literature, the affirmative act of the Defendant Officers knocking on the front door of Ms. Barela's home and then failing to investigate fully before leaving, increased her vulnerability to the danger.

78. Defendant Officers failed to investigate and departed the scene within 18 minutes of arrival without taking adequate steps to insure Ms. Barela's safety.

79. Defendant Dispatchers and Defendant Police Officers are not entitled to qualified immunity because, when viewed in their totality, their affirmative actions were conscience shocking, and placed Ms. Barela in serious, immediate, and proximate harm, and they engaged in these actions willfully and intentionally, and/or in reckless disregard of and with deliberate indifference towards Plaintiffs' federally protected constitutional rights to life under the Fourteenth Amendment.

80. This pattern of complained of willful acts by Defendant Dispatchers and Defendant Officers were moving causal forces behind Plaintiffs' injuries.

81. As a direct and proximate cause of Defendant Dispatchers' and Defendant Officers' unlawful conduct, Ms. Barela was beaten and strangled to death, entitling Plaintiff Estate to compensatory and special damages, in amounts to be determined at trial.

82. Plaintiff Estate has incurred special damages in the form of loss of past, continuing, and future earnings from Loretta Barela's death, in amounts to be ascertained based on her likely working life at trial.

83. Plaintiff Estate has also incurred special damages in the form of medically related expenses and funeral expenses.

84. Plaintiff Estate is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

85. In addition to compensatory, economic, consequential and special damages, Plaintiff Estate is also entitled to punitive damages against Defendant Dispatchers because his conduct involves reckless and callous indifference to Plaintiff Estate's federally protected rights.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Deliberately Indifferent Training and Supervision and Deliberately Indifferent Failure to Adopt Policies Necessary to Prevent Constitutional Violations
### (Estate of Loretta Barela Against Defendant City and County of Denver Only)

86. Plaintiffs incorporate all of the preceding paragraphs as if they were fully set forth verbatim.

87. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

88. Plaintiff Estate in this action was a citizen of the United States and the individual Defendant to this claim is a person for purposes of 42 U.S.C. § 1983.

89. At the time of the complained of events, Loretta Barela, now proceeding through the Plaintiff Estate of Loretta Barela, as her successor, had a clearly established substantive due process constitutional right under the Fourteenth Amendment to life, liberty, and bodily integrity.

90. Defendant City knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

91. The reckless and/or grossly negligent and deliberately indifferent acts and omissions of Defendant City by its top level final decision makers or delegated final decision makers, as described herein, were moving forces in the deprivation of Plaintiff Estate's constitutional and statutory rights and caused her damages.

92. Defendant City was, at all times relevant, the policy and decision makers for the Denver Department of Safety through its final decision makers and delegated final decision maker, and, in that capacity, established training and supervision including monitoring, and sufficient discipline for the same, or through their delegated final policy and decision makers at the Department.

93. Defendant City and/or its final and final delegated policy and decision makers with actual knowledge of the urgent need for sufficient training and supervision, did not reasonably provide such sufficient training and supervision.

94. This deliberately indifferent training and supervision including inadequate monitoring and discipline by the Defendant City, resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant City, which were moving forces in the constitutional and federal violation injuries complained of by Plaintiff Estate.

95. As evidenced by the clearly established pattern of mishandling calls involving imminent danger or a life-threatening emergency, Defendant City has failed to train and/or

supervise its employees to handle recurring situations that present obvious potential for Constitutional violations.

96. Defendant City, as evidenced through Defendant Dispatchers collective actions in the handling of Ms. Barela's emergency situation, established an informal custom amounting to widespread practice that is so permanent and well settled as to constitute custom or usage with force of law.

97. As a direct and proximate result of Defendant City's conduct and omissions, Loretta Barela was beaten and strangled to death, entitling her Plaintiff Estate to compensatory and special damages, in amounts to be determined at trial.

98. Plaintiff Estate has incurred special damages in the form of loss of past, continuing, and future earnings from Loretta Barela's death, in amounts to be ascertained based on her likely working life, at trial.

99. Plaintiff Estate has also incurred special damages in the form of medically related expenses and funeral expenses.

100. Plaintiff Estate are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

**THIRD CLAIM FOR RELIEF**
**Willful and Wanton Conduct Resulting in Wrongful Death**
**(Plaintiffs Marie Cruz, Eddie Rosa, Ray Rosa, and Cleotide Roll Against Defendants City and County of Denver, Denver Police Dispatcher TSH, Denver Police Dispatcher BAR, Denver Police Dispatcher TDP, Denver Police Dispatcher SMC, Denver Police Officer Radio Identifier 432A, and Denver Police Officer Radio Identifier 435A,)**

101. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth verbatim.

102. The Defendant Dispatchers are public employees within the meaning of the Colorado Governmental Immunity Act, C.R.S. § 24-10-103.

103. The Defendant Dispatchers are not entitled to immunity under the Colorado Governmental Immunity Act because their acts and omission were willful and wanton within the meaning of C.R.S. §§ 24-10-105(1) and 24-10-118.

104. The Defendant Dispatchers were acting within the scope of their employment when they committed such willful and wanton acts that were actual and proximate causes of Plaintiffs' persisting financial and emotional injuries.

105. The Defendant Dispatchers were consciously aware that their acts and omissions created danger and risk to the safety and life of Loretta Barela and acted and/or failed to act, without regard for the danger or risk.

106. The willful and wanton acts and omissions outlined herein were a substantial and significant proximate cause in Loretta Barela's avoidable death.

107. As a direct and proximate cause of Defendants' willful and wanton conduct, causing wrongful death, Plaintiffs are entitled to an award of general compensatory damages for their resulting ongoing grief, emotional distress, pain and suffering, anxiety, inconvenience and impairment of the quality of life against defendant in such amounts as are determined to be just and owing by the jury at trial.

108. Plaintiffs have also incurred special damages in the form of loss of past, continuing and future earnings from Loretta Barela's death during her likely working life, as she was supporting Plaintiff Jazmin Trujillo, in amounts to be determined at trial.

109. Plaintiffs may also have ongoing special damages for medically/psychologically related treatment caused by the conduct of the Defendant Dispatchers.

110. There is no cap under Colorado's Governmental Immunity Act on Plaintiffs' wrongful death claims as Defendants' acts and omission in this case were willful and wanton within the meaning of C.R.S. §§ 24-10-105(1) and 24-10-118.

111. In addition to other damages sought, Plaintiffs are also seeking exemplary damages for the willful and wanton acts of the Defendant Dispatchers on this state law claim.

### FOURTH CLAIM FOR RELIEF
### Felonious Killing Resulting in Wrongful Death
### (Plaintiffs Marie Cruz, Eddie Rosa, Ray Rosa, and Cleotide Roll Against Defendant Christopher Perea)

112. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth verbatim.

113. Defendant Perea murdered Loretta Barela by beating and strangling her to death, which constitutes felonious killing. He was convicted of First-Degree Felony Murder and Second-Degree Murder on May 2, 2014.

114. The usual wrongful death cap on damages does not apply to Defendant Perea because his act resulting in wrongful death constitutes felonious killing.

115. As a direct and proximate cause of Defendant's willful and wanton conduct, causing

wrongful death, Plaintiffs are entitled to an award of general compensatory damages for their resulting ongoing grief, emotional distress, pain and suffering, anxiety, inconvenience and impairment of the quality of life against defendant in such amounts as are determined to be just and owing by the jury at trial.

116. Plaintiffs have also incurred special damages in the form of loss of past, continuing and future earnings from Loretta Barela's death during her likely working life, as she was supporting Plaintiff Jazmin Trujillo, in amounts to be determined at trial.

117. Plaintiffs may also have ongoing special damages for medically/psychologically related treatment caused by the conduct of the Defendant Perea.

118. In addition to other damages sought, Plaintiffs are also seeking exemplary damages for the willful and wanton acts of Defendant Perea on this state law claim.

## VI. PRAYER FOR RELIEF

119. Plaintiffs pray that this Court enter judgment for the Plaintiffs and against each of the Defendants and grant an award for:

A. Compensatory and consequential damages, including damages for emotional distress, loss of enjoyment of life, and other suffering on all claims allowed by law in an amount to be determined at trial;
B. Economic losses on all claims allowed by law;
C. Special damages in amounts to be determined at trial;
D. Punitive damages allowed by law against all Defendants and in amounts to be determined at trial;
E. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;
F. Pre- and post-judgment interest at the lawful rate;
G. Declaratory and injunctive relief appropriate to the constitutional violation in this case, and;
H. Any other appropriate relief at law and equity that this court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial to a jury.

Dated: November 17, 2014.

By:   /s/ David M. Roth, esq.
David M. Roth, #44800

Brian A. Murphy, #30918
The Murphy Law Firm, LLC
10200 W. 44th Ave., Suite 340
Wheat Ridge, CO 80033
Attorneys for Plaintiff
*Signed Original Available For Inspection*