**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-03094-REB-NYW

ESTATE OF LORETTA BARELA,
MARIE CRUZ,
EDDIE ROSA,
RAY ROSA,
CLEOTILDE ROLL, as parent and next friend of JAZMIN TRUJILLO,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER,
TIMOTHY HUCKSOLL, individually,
BRIDGET RHODES, individually,
TIMOTHY PACKMAN, individually,
SCOTT CRAWFORD, individually,
OFFICER SUSAN MERCADO, individually,
OFFICER JENNIFER FRANCE, individually, and
CHRISTOPHER PEREA,

    Defendants.

**ORDER OVERRULING OBJECTIONS AND ADOPTING
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**Blackburn, J.**

The matters before me are (1) the **City and County of Denver's Motion To Dismiss** [#42][1] filed April 3, 2015; (2) the **Motion To Dismiss** [#52] of Timothy Packman, filed April 21, 2015; (3) the **Denver Defendants' Motion To Dismiss** [#63] filed May 1, 2015; and (4) the related **Recommendation of United States Magistrate Judge** [#90], filed June 23, 2015. The plaintiff filed objections [#95] to the

---

[1] "[#42]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

recommendation to which the defendants filed responses [#96 & #97]. I overrule the objections, approve and adopt the recommendation, and grant the motions to dismiss.

As required by 28 U.S.C. § 636(b), I have reviewed *de novo* all portions of the recommendation to which the plaintiff objects. I have considered carefully the recommendation, objections, and applicable case law, as well as the arguments raised, authorities cited, and evidence presented by the parties. The motions at issue are motions to dismiss for failure to state a claim. Thus, the facts alleged by the plaintiffs in their complaint [#33] are assumed to be true.

## I. FACTS ALLEGED & CLAIMS

This case arises from the November 18, 2012, death of Loretta Barela. In the early morning hours of November 18, defendant Christopher Perea and Ms. Barela were engaged in a violent dispute at their home in Denver, Colorado. At approximately 2:00 a.m., a partially clothed Ms. Barela fled the house seeking help. She awakened a neighbor across the street, Rita Espinoza, by pounding on her door. After opening the door, Ms. Espinoza retreated into her home in search of a shirt for Ms. Barela. When she returned to the front door, Ms. Espinoza saw Christopher Perea dragging Ms. Barela by her hair across the street and into the couple's home.

At 1:56 a.m., Ms. Espinoza dialed 911 and stated to the responding dispatcher, defendant Timothy Hucksoll:

> My neighbor came and was pounding on my door and she had pants on and no shirt on. Her boyfriend came out and was pulling her across the street. He locked the door and hitting her. And she's a very small woman and he's a pretty big man.

[Id. at ¶ 8]. Mr. Hucksoll told Ms. Espinoza that "they would 'get the officers to go over there.'" [Id. at ¶¶ 9, 40]. Ms. Espinoza watched the Barela home for 45 minutes and

2

noted that no officers arrived. At 2:45 a.m., Ms. Espinoza called 911 a second time. The 911 dispatcher, defendant Bridgett Rhodes, responded:

> Alright. Yeah, no. We haven't forgotten about you. We've just been extremely busy tonight…We do have a call for officers to head out and check on them – or check her I should say.

[Id. at ¶¶ 11, 46]. At the time, police officers had not been dispatched to the Barela home. The plaintiffs allege that the dispatchers mis-categorized and under-prioritized the call concerning Ms. Barela.

At 3:03 a.m., police were dispatched to the Barela home. Approximately one hour and six minutes passed between the first call to 911 by Ms. Espinoza and the time when police were dispatched to the Barela home. The plaintiffs allege that during the time between Ms. Espinoza's first phone call to 911 and the time when the police were dispatched, defendant dispatcher Timothy Packman reset a system timer three times and dispatcher defendant Scott Crawford reset the system timer once. Resetting this timer delayed the dispatch of police officers to the home of Ms. Barela. Officers arrived at the Barela home about four minutes after they were dispatched. Ms. Espinoza observed the officers knock on the door of the Barela home and shine lights into the house before departing without further investigation, approximately eighteen minutes after they arrived. The plaintiffs allege that defendant police officers Jennifer France and Susan Mercado were the officers who conducted this investigation at the Barela home.

At 8:15 a.m. that morning, Christopher Perea contacted the Denver police to report that Ms. Barela was dead. He said he believed he had killed her. Ms. Barela later was pronounced dead at the scene. Her death was a result of blunt force injury

3

and strangulation. Her estimated time of death was between 4:00 a.m. and 6:00 a.m. Christopher Perea was convicted of first degree murder and is serving a life sentence.

Based on these facts, the plaintiffs assert five claims: (1) a Fourteenth Amendment due process claim against the dispatchers who handled the calls of Ms. Espinoza and the police officers who responded to the Barela residence; (2) a Fourteenth Amendment equal protection claim against the dispatchers who handled the calls of Ms. Espinoza; (3) a claim of deliberately indifferent training and supervision and deliberately indifferent failure to adopt policies necessary to prevent constitutional violations against the City and county of Denver; (4) a claim of willful and wanton conduct resulting in wrongful death against the dispatchers; and (5) a claim of felonious killing resulting in wrongful death against defendant Christopher Perea. The Estate of Loretta Barella is the only plaintiff named in claims one through three.

## II.  RECOMMENDATION

### A.  Substantive Due Process

The due process claim of the Estate of Loretta Barela is based on the substantive due process theory of state created danger. The magistrate judge recommends that this claim be dismissed for failure to state a claim on which relief can be granted.

Nothing in the Due Process Clause requires the state to protect the life, liberty, or property of its citizens against invasion by private actors. ***DeShaney v. Winnebago County Dept. of Social Services***, 489 U.S. 189, 195 (1989). "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." ***Id***. One key aspect of a substantive due process claim is

4

conduct by a state actor which affirmatively places an individual in a position of danger, "effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Armijo By and Through Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1263 (10th Cir. 1998). "(I)f the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed." *Id*. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *DeShaney*, 489 U.S. at 200.

In the objections [#95], the Estate of Loretta Barela contends the magistrate judge improperly viewed affirmative acts by the defendants as inaction and improperly analyzed certain alleged affirmative acts of the defendants. I disagree. Affirmative conduct by a state actor is only one part of a substantive due process claim. Such a claim is viable only when the conduct or, on some occasions, inaction of a state actor caused the danger at issue by altering the status quo and placing the plaintiff in a worse position than she would have been without action by a state actor. *See DeShaney*, 489 U.S. at 198 - 201. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id*. at 200.

The Estate of Ms. Barela contends the promises of the dispatcher to Ms.

Espinoza that police were on the way to the Barela residence effectively prevented Ms. Espinoza from calling the son of Ms. Barela to help Ms. Barela.  Nothing alleged in the complaint indicates in any way that the defendants somehow took action which prevented Ms. Espinoza from calling the son of Ms. Barela.  The defendants did not restrain, preclude, or prohibit Ms. Espinoza from taking any action in addition to calling 911.

The analysis of the magistrate judge concerning the substantive due process claim is thorough and correct.  As to the substantive due process claim, I overrule the objections [#95] expressed by the Estate of Ms. Barela and approve and adopt the analysis of the magistrate judge.

## B.  Equal Protection

The plaintiffs contend the defendant dispatchers who handled the 911 call of Ms. Espinoza violated the right of Ms. Barela to equal protection of the law.  Although there is no general constitutional right to police protection, the state may not discriminate unlawfully in providing such protection.  **Price-Cornelison v. Brooks**, 524 F.3d 1103, 1114 (10th Cir. 2008).  The magistrate judge recommends that this claim be dismissed for failure to state a claim on which relief can be granted.

To allege unlawful discrimination by the dispatchers, the estate of Ms. Barlea compares the police response time based on the calls of Ms. Espinoza to 911 to the average 911 response times for the Denver Police.  In addition, the estate alleges that, at the time Ms. Espinoza placed her 911 calls, the dispatchers promptly dispatched police to other calls of similar or lesser urgency, a robbery and two traffic accidents. These facts, the estate contends, support a reasonable inference that the dispatcher

6

defendants intentionally and unlawfully discriminated against Ms. Barela because she was a victim of domestic violence, she was a resident of police district 4, and/or as a class of one.

The magistrate judge concluded that these allegations are not sufficient to allege intentional unlawful discrimination by the police dispatcher defendants. She notes that the plaintiff does not allege that any of the dispatcher defendants were involved with the dispatch of police to the robbery or to the two traffic accidents. Further, there are no allegations indicating how the actions of the dispatcher defendants are or are not involved in the audit of Denver police response times, the comparator on which the plaintiff relies. Ultimately, the magistrate judge concludes that the allegations in the complaint do not include facts which plausibly show that the dispatcher defendants intentionally discriminated against Ms. Barela as a victim of domestic violence, a resident of police district 4, or a class of one. I agree with the magistrate judge that allegations of intentional unlawful discrimination by individuals may not be based soley on the inferences suggested by the plaintiffs.

The analysis of the magistrate judge concerning the equal protection claim is thorough and correct. As to the equal protection claim, I overrule the objections [#95] expressed by the plaintiffs and approve and adopt the analysis of the magistrate judge.

### C. Qualified Immunity

The individual defendants have asserted the defense of qualified immunity. To overcome this defense, a plaintiff must show (1) that the conduct of the defendant violated a constitutional right; and (2) the law governing that conduct was clearly established at the time of the alleged violation. Because the plaintiffs have not alleged

facts to state claims for violations of their right to due process of law or equal protection of the law by the individual defendants, the plaintiffs have not alleged that the conduct of the individual defendants violated a constitutional right. Given that conclusion, the magistrate judge concludes correctly that the individual defendants are entitled to qualified immunity.

### D. Municipal Liability

As the magistrate judge notes, a municipal liability claim is foreclosed in the absence of a constitutional violation by the individual defendants who are tied to the municipality. Because the plaintiffs have not adequately alleged constitutional claims against the individual defendants, the municipal liability claim of the plaintiffs also fails.

### E. Supplemental Jurisdiction

The two remaining claims are a state law claim of willful and wanton conduct resulting in wrongful death, asserted against the dispatchers, and a state law claim of felonious killing resulting in wrongful death against defendant Christopher Perea. With the dismissal of all of the federal claims, the magistrate judge recommends that the court decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. I agree with this conclusion.

### III. CONCLUSION & ORDERS

The magistrate judge notes that the allegations of the plaintiffs are "tragic and chilling." *Recommendation* [#90], p. 19. No doubt, that is true. Even so, for the reasons detailed by the magistrate judge, the plaintiffs have not alleged facts which are sufficient to state a claim for violation of their right to due process of law or equal protection of the law. Given that fact, those claims must be dismissed, and the tethered

municipal liability claim must be dismissed. Given the dismissal of all of the federal claims asserted by the plaintiffs, I decline to exercise supplemental jurisdiction over the remaining state law claims.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Recommendation of United States Magistrate Judge** [#90], filed June 23, 2015, is approved and adopted as an order of this court;

2. That under Fed. R. Civ. P. 12(b)(6), the **City and County of Denver's Motion To Dismiss** [#42] filed April 3, 2015, is granted;

3. That under Fed. R. Civ. P. 12(b)(6), the **Motion To Dismiss** [#52] of Timothy Packman, filed April 21, 2015, is granted;

4. That under Fed. R. Civ. P. 12(b)(6), the **Denver Defendants' Motion To Dismiss** [#63] filed May 1, 2015, is granted;

5. That under Fed. R. Civ. P. 12(b)(6), the due process claim and the equal protection claim asserted in claims one and two of the **Amended Complaint and Jury Demand** [#33] are dismissed;

6. That under Fed. R. Civ. P. 12(b)(6), the failure to train, supervise, and adopt adequate policies claim asserted against the City & County of Denver in claim three of the **Amended Complaint and Jury Demand** [#33] is dismissed;

7. That judgment shall enter in favor of the defendants, City and County of Denver, Timothy Hucksoll, Bridget Rhodes, Timothy Packman, Scott Crawford, Officer Susan Mercado, and Officer Jennifer France, and against plaintiff the Estate of Loretta Barella, on the first, second, and third claims for relief as alleged in the **Amended Complaint and Jury Demand** [#33];

8. That under 28 U.S.C. § 1367, the court declines to exercise supplemental jurisdiction over the remaining state law claims and, thus, those claims are dismissed;

9. That defendants, except for Christopher Perea, are awarded their costs to be taxed by the clerk of the court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

10. That this case is closed.

Dated March 16, 2016, at Denver, Colorado.

                **BY THE COURT:**

*Bob Blackburn* (signature)

Robert E. Blackburn
United States District Judge